

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERRY KENNETH SCHWEHM** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 99-2622 c/w** |
| | | **00-2263** |
| **STATE OF LOUISIANA,** | * | **SECTION: "J"(6)** |
| **DEPARTMENT OF CORRECTIONS** | | |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. Accordingly, it is recommended that the petition be **DENIED** with prejudice.

**I. PROCEDURAL HISTORY[1]**

Petitioner, Jerry Schwehm, who is not presently incarcerated, having been released on parole,[2] was convicted of two counts of malfeasance in office, in violation of LSA-R.S.

---

[1] A portion of the procedural history is taken from the Louisiana First Circuit Court of Appeal's opinion in *State v. Schwehm*, 754 So.2d 264, 265 (La. App. 1 Cir. 1999).

[2] A person released on parole is considered to be "in custody" for purposes of this Court's habeas corpus jurisdiction. *See Jones v. Cunningham*, 371 U.S. 236, 242-43, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); *Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County, California,*

DATE OF ENTRY
DEC 1 1 2000

DATE OF MAILING _____ DEC 1 1 2000

14:134.³ Pursuant to his initial appeal, the Louisiana First Circuit affirmed one conviction and sentence for malfeasance relative to charging fees for peace bonds, but reversed the remaining conviction and sentence for malfeasance relative to failure to remit litter fines. *See State v. Schwehm*, 713 So.2d 697 (La. App. 1 Cir. 1998). The Louisiana Supreme Court however, granted the State's writ application, reinstated the conviction and sentence which the Louisiana First Circuit had reversed, and remanded the matter to the state appellate court. *See State v. Schwehm*, 729 So.2d 548 (La. 1999). On remand, the Louisiana First Circuit affirmed petitioner's conviction. *See State v. Schwehm*, 754 So.2d 264 (La. App. 1 Cir. 1999).

Following the state appellate court's decision, petitioner filed a habeas petition with this Court, ***Jerry Kenneth Schwehm v. State of Louisiana, Department of Corrections***, Civil Action 99-2263 "J"(6). Pursuant to District Judge Carl J. Barbier's Judgment entered December 20, 1999, petitioner's habeas application was dismissed without prejudice based upon petitioner's failure to exhaust his state court remedies. Thereafter, petitioner, in order to exhaust his state court remedies, filed a writ application with the Louisiana Supreme Court which was denied on March 31, 2000. *See State v. Schwehm*, 759 So.2d 68 (La. 2000).

On or about August 1, 2000, petitioner submitted to this Court for filing an "Amended Petition for Writ of Habeas Corpus," seeking to reopen his earlier habeas proceeding, Civil Action 99-2622 "J"(6), which had previously been dismissed without prejudice for failure

---

411 U.S. 345, 348-49, 93 S.Ct. 1571, 1573-74, 36 L.Ed.2d 294 (1973).

³Schwehm was charged via grand jury indictment with two counts of malfeasance in office, one count of unauthorized use of movables, and one count of theft of money in excess of $500.00. The two malfeasance counts were severed and tried separately. The record does not indicate the disposition of the two remaining counts.

to exhaust. Pursuant to the undersigned magistrate judge's order entered August 3, 2000, petitioner's "Amended Petition for Writ of Habeas Corpus," for administrative purposes, was assigned a new civil docket number, Civil Action 00-2263 "J"(6), petitioner was allowed to reopen Civil Action 99-2622 "J"(6), and Civil Actions 99-2622 "J"(6) and 00-2263 "J"(6) were consolidated.

In this timely-filed consolidated habeas application, petitioner seeks to have this Court grant him federal habeas corpus relief claiming that he did not receive constitutionally effective assistance of counsel and that the evidence was insufficient to support his convictions. The State has filed a timely response and concedes that petitioner has now exhausted his state court remedies. *See Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

## II. FACTS[4]

On December 13, 1990, petitioner, a practicing attorney, was sworn in as the Justice of the Peace for Ward 8 of St. Tammany Parish. In January of 1994, the office of the legislative auditor conducted an audit of petitioner's office. The investigation revealed that, as of the time of the investigation, petitioner had not remitted to St. Tammany Parish any portion of the litter fines he had imposed and collected. Subsequently, petitioner was indicted for two counts of malfeasance in office alleged to have occurred between January 1, 1991 and December 31, 1993. Count one charged that petitioner failed to remit to St. Tammany Parish litter fines he collected as required by statute and parish ordinance. Count three charged that he illegally

---

[4] The facts are taken from the Louisiana First Circuit's opinion in *State v. Schwehm*, 754 So.2d 264, 265 (La. App. 1 Cir. 1999).

collected fees and charged persons for the lodging and filing of peace bonds.

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Since the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas review on a mixed question of law and fact, such as ineffective assistance of counsel, is restricted to a determination as to whether or not the pertinent state court decision, i.e., the state court decision addressing the issue raised upon habeas review, rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. 28 U.S.C. §2254 (d)(1). The U.S. Supreme Court has recently commented that "[t]he term 'unreasonable' is no doubt difficult to define." *Williams v. Taylor*, -- U.S. --, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000). However, the Court instructed that "[u]nder §2254(d)(1)'s 'unreasonable application' clause. . . a federal habeas court may not issue the writ simply because that court concludes in its *independent* judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* (emphasis added).

The "clearly established Federal law, as determined by the Supreme Court," pertaining to ineffective assistance of counsel, is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Pursuant to *Strickland*, a convicted defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

4

Under the deficient performance prong of the *Strickland* test, "it is necessary to judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993), quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *U.S. v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), quoting *U.S. v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 688-89, 104 S.Ct. at 2065. Petitioner "carries the burden of proof...and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of professional assistance." *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986).

To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The *Strickland* court defined a reasonable probability as a "probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine the "relative role that the alleged trial errors played in the total context of the trial." *Crockett*, 796 F.2d at 793. With the *Strickland* guidelines and the state courts' application of said guidelines in mind, the Court turns to Schwehm's individual claims for relief.

### 1. Counsel's Failure to Defend

Petitioner complains that his counsel, Brice Jones and Marion Farmer, failed to put

on an adequate defense. Petitioner points to the fact that counsel rested their case without calling petitioner, or any other witness, in defense. Further, petitioner claims that counsel were ineffective because they failed to engage in discovery, failed to interview witnesses, failed to conduct mock trials, failed to prepare legal memoranda, and failed to discuss with petitioner their "trial strategy." Petitioner claims to have been taken aback when counsel rested their case without calling him to the witness stand.

The above claims were raised, and rejected, in the state courts based upon a finding that petitioner had failed to meet the *Strickland* standard.

> At the hearing held on his motion for new trial, defendant testified counsel never discussed trial strategy with him and he was totally stunned when they failed to call him to the stand or to present any defense. According to defendant, had he testified at trial, he could have explained his mental state at the time in question due to the fact that his wife was dying of cancer at that time. He also stated he would have explained what was going on in his office with his constable, who he claimed in his taped interview with investigators was responsible for charging peace bond fees without defendant's knowledge. Defendant also alleged there were other defense witnesses his attorneys could have called to testify on his behalf regarding the peace bond issue. However, with the exception of Dr. John Galloway, defendant did not present the testimony of any of these witnesses at the motion hearing. Dr. Galloway was accepted at the hearing as an expert sociologist and social worker. He testified he counseled defendant throughout his wife's illness, including the time of the alleged malfeasance. According to Dr. Galloway, during this time, defendant was depressed, had difficulty concentrating, was confused and disorganized, and was unable to handle his affairs without support. Defendant also complains that his attorneys were improperly prepared for trial in that they did not interview his former secretaries Belinda Durr and Marlene Perry, both of whom gave damaging testimony against him, prior to trial.
>
> Both of defendant's trial counsel, Brice Jones and Marion Farmer, testified at the hearing on defendant's motion. The substance of their testimony was that, although they did not personally talk to several potential witness, they knew through discovery or otherwise what these witness would testify to, and the trial testimony of those witnesses contained no surprises. They also testified that the decision for defendant not to testify, as well as the decision not to put on any defense witnesses, was made after discussion among themselves and defendant. Both counsel testified they did not believe defendant would make a good witness, because he had difficulty staying

6

focused and a tendency to wander in his statements. Mr. Farmer testified he was concerned that this tendency might cause defendant to say something prejudicial to his case. Mr. Farmer was particularly concerned that defendant would have difficulty explaining certain matters on cross-examination.

In concluding that defendant failed to prove his claim of ineffective assistance of counsel, the trial court accepted the testimony of Mr. Jones and Mr. Farmer that the decision to rest without calling any witnesses was a "considered decision" between defendant and his attorneys. The court specifically rejected defendant's testimony that "he did not agree with the decision of his counsel to rest the case and was shocked when Mr. Jones rested...." In extensive written reasons for judgment, the trial court further stated:

> Defendant also complained that his counsel did not call character witnesses such as Dr. John Galloway, who would have testified that defendant was grieving the illness and subsequent death of his wife and was suffering from depression at the time of the alleged malfeasance. These witnesses did not have information regarding the merits of the case. They could not testify to the defendant's reasons for not remitting the litter fines or for accepting money for the filing of peace bonds.
>
> The defendant's main complaint is that he wanted to testify and counsel did not give him the opportunity. At the motion hearing he presented Mr. Ralph Whalen who was accepted by the court as an expert witness in criminal law. Mr. Whalen opined that in cases of malfeasance, the public official should be called to testify unless the defense has a compelling reason not to call him. Mr. Jones and Mr. Farmer both testified that they felt such a reason existed because the defendant would not make a good witness. When discussing the case with him, they found it very difficult to keep defendant on point and get responsive answers. He was too talkative and tended to make statements which were possibly harmful. Both counsel felt they had effectively cross examined the State's witnesses and they felt they had an ideal jury. They felt that the tempo of trial was with them and they only needed a strong closing argument to win the case. The defendant agreed with them and all three made the decision to rest without calling witnesses. Both counsel clearly state that defendant supported the decision to rest the case and did not doubt the decision until the verdict came back.
>
> The Court finds that trial counsel spent many hours working on the defense of this case and vigorously argued pretrial motions. Though

> they may not have questioned all possible witnesses before trial, they were fully aware of their possible testimony. Counsel did not feel there were any material fact witnesses who would be helpful to the defense including the defendant himself. The defendant did not bring any witnesses to the motion hearing who could have offered evidence at trial to exonerate him. Without material fact witnesses to support defendant, the decision not to call character witnesses or the defendant is a trial strategy which cannot be questioned in hindsight. The failure of a trial strategy does not necessarily mean that counsel was ineffective....
>
> Based on our review of the entire record, we find no error in the ruling of the trial court rejecting defendant's claim of ineffective assistance of counsel. The record indicates the decision for defendant not to testify was a strategic decision based on a weighing of the potential risks against the possible benefits. The decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel.... Furthermore, regarding the allegation that there were other possible defense witnesses who could have been called to testify, defendant failed to introduce sufficient evidence at the motion hearing to substantiate his claim that trial counsel were ineffective in not calling any of these witnesses. Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel.... Defendant has failed to establish that he was prejudiced by the deficient performance of his trial counsel.

*State v. Schwehm*, 713 So.2d 697, 705-06 (La. App. 1 Cir. 1988).

Presuming the state court's factual findings to be correct,[5] and based upon this Court's independent review, the undersigned finds that the above application of *Strickland*, specifically, the state court's finding that petitioner had failed to satisfy the requirements of *Strickland*, was not unreasonable. Accordingly, petitioner is not entitled to habeas relief in this regard.

### 2. Counsel's Failure to Present Evidence Regarding Petitioner's Reimbursement of Litter Fines

Petitioner argues that his counsel rendered ineffective assistance due to their failure

---

[5] Under the provisions of 28 U.S.C. Section 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."

to present evidence to the effect that he had attempted to pay the St. Tammany Parish Police Jury the amount of money which his office had received in litter fines. However, the Louisiana First Circuit rejected this argument, reasoning:

> [T]he fact that defendant attempted to make this remittance would appear to be of little probative value on the issue of guilt or innocence, since the remittance was not attempted until well after defendant was under investigation for possible improprieties regarding litter fine collections. Thus, we believe there is little probability that evidence of the ... remittance would have affected the outcome of the trial, particularly when such evidence is considered in light of the evidence presented at trial indicating that defendant intentionally used money collected from litter fines for his own benefit. In its per curiam opinion reinstating defendant's conviction and sentence, the supreme court outlined this evidence as follows:
>
>> According to Belinda Durr, who worked as defendant's secretary for approximately five months at the end of 1992, when the office received cash for litter fines, defendant used the money in a variety of ways, dividing it with the constable "for office expenses or to go to lunch or whatever they wanted to do with it." Durr testified that when she asked about the fines, and about whether the state received any of the money, defendant told her that "what they don't know doesn't hurt them." Maureen Perry, who also worked as a secretary for the defendant, told jurors that whatever cash was received in the office for litter fines or fees for issuing peace bonds would be "disburse[d] at the end of the week." Perry testified that when she asked the defendant about the litter fines, he replied that "it was his money and he said he could do what he wanted." The defendant made a similar statement to Mario Ventura, president of the St. Tammany Parish Justice of the Peace Association, in the early spring of 1992, when both men were attending a conference of justices of the peace in Lafayette. Ventura testified that when he asked the defendant whether he was turning over the litter fines to the parish the defendant replied that he was absorbing the money collected "in court costs ... eating it up in expenses." When Ventura asked how he was doing that, the defendant added, "Well, you're a smart guy, figure it out...."
>
>> [T]he defendant's statements to Durr, Perry, and Ventura, and especially the low balance in the Justice of the Peace account in September of 1993, below the total amount collected in litter fines and coinciding with the transfer of nearly nine thousand dollars from the account to his professional law account in New Orleans, all reflected

> the defendant's design to use the fine money collected to benefit himself and, coincidentally, his public office and not the governing authority of the parish, and that he had thereby intentionally refused to perform the duty placed upon him by law....

*State v. Schwehm*, 754 So.2d 264, 266-67 (La. App. 1 Cir. 1999), quoting *State v. Schwehm*, 729 So.2d 548, 550-51 (La. 1999).

This Court finds the state court's determination that petitioner was not prejudiced, and therefore, suffered no constitutional violation under *Strickland*, by virtue of counsel's failure to offer evidence regarding petitioner's relatively late reimbursement of the amount collected in litter fines, to be reasonable. Accordingly, petitioner is not entitled to habeas corpus relief in this regard.

### 3. Counsel's Failure to File a Motion for Bill of Particulars

Petitioner claims that filing a motion for a bill of particulars was critical in this case, rendering counsel's performance ineffective due to their failure to file such a motion, based upon the following argument:

> Petitioner was convicted, in the trial court, of a violation of a local ordinance, Ordinance Police Jury Series Number 89-1148, which had been adopted by the St. Tammany Parish Police Jury on September 21, 1989. If defense counsel had filed a Motion for Bill of Particulars and the State had responded that the underlying duty was outlined in this Ordinance, defense counsel could have filed a Motion to Quash the Indictment on the basis that the Ordinance was not a valid Ordinance since it was in conflict with state law, namely R.S. 25:1112 and R.S. 13:2589(B).[6]

Petitioner's argument in this regard is without merit since he suffered no prejudice as a result of counsel's alleged deficient performance in failing to file a motion for a bill of particulars. As noted in the Louisiana Supreme Court's opinion, Ordinance Number 89-1148 "required that the justice of the peace courts remit all litter fines in full to the Police Jury which would, in turn,

---

[6] *See* Memorandum of Petitioner in Support of Amended Petition for Writ of Habeas Corpus at p. 18.

reimburse 50 per cent of the amount collected to the justice of the peace courts for the time spent and expenses incurred in enforcing the littering law." *Schwehm*, 729 So.2d at 549. This ordinance was "[c]onsistent with ... state law," specifically, R.S. 13:2589(B), which "required that local governing bodies [such as the St. Tammany Parish Police Jury] receiving the fines reimburse 'those justices of the peace courts ... for the time spent and expenses incurred ...' in the prosecution of litter violations." *Id.* A conflict between state law and the parish ordinance did not arise until 1992. As the Louisiana Supreme Court explained:

> In 1992, the legislature plunged the entire matter of litter fine remittance into confusion by passing two conflicting laws, one purporting to repeal subsection La. R.S. 25:1112(A) altogether, 1992 La. Acts 361, and the other purporting to amend and reenact subsection La. R.S. 25:1112(A) to provide for fractional disbursements to various authorities, including 55 per cent to the local governing authority in which the offense was committed. 1992 La. Acts 362. Act 361 also purported to amend R.S. 25:1112(B) to provide that "[a]ll monies received under the provisions of this Part shall be paid into the state treasury on or before the twenty-fifth day of each month following their collection...." Subsequent acts passed in the same legislative session amended La. R.S. 25:1112(B) to require that "all other funds" be paid into the state treasury, as if R.S. 25:1112(A) were still in effect.

*Id.* (citation omitted). The confusion, however, was alleviated on August 15, 1993, when R.S. 25:1112(A) was amended to provide that "'[a]ll fines collected in justice of the peace courts and parish courts ... shall be paid to the governing authority of the parish in which the offense was committed....'" *Id.* at 550, quoting 1993 La. Acts 579.

As noted above, petitioner was charged, and convicted, of failing to remit to the St. Tammany Policy Jury litter fines he collected over the period from January 1, 1991 to December 31, 1993.[7] At trial, petitioner "conceded that [he] had failed to remit any of the litter fines collected over the three-year period charged in the indictment." *Id.* The alleged confusion, specifically, the conflict

---

[7] *See supra* at p. 3.

11

between state law and St. Tammany's local ordinance, did not exist for the entire three-year period charged in the indictment. Specifically, the confusion "did not affect [petitioner's] collection of the litter fines [and his failure to remit same to the St. Tammany Police Jury] from January 1, 1991 until the summer of 1992, when either act 361 or 362 went into effect." *Id.* at 551. Further, the alleged confusion did not affect petitioner's collection of litter fines and his failure to remit same to the St. Tammany Parish Police Jury from August 15, 1993, when the pertinent state law was amended and the conflict was resolved, until December 31, 1993. Thus, assuming that defense counsel's filing of a motion for a bill of particulars would have revealed that Ordinance Number 89-1148 served as the basis of petitioner's indictment, such information would not have led to a successful motion to quash petitioner's indictment. At most, prosecutors would simply have amended the indictment, excluding from its coverage the one-year period from the summer of 1992 to the summer of 1993, when a conflict between the ordinance and state law existed. Counsel's failure in this regard did not prejudice petitioner.

### 4. Counsel's Failure to File a Motion to Quash and Failure to Object to the Admission of "Peace Bond Files"

Petitioner argues that counsel erred, rendering their representation constitutionally ineffective, based upon counsel's failure to file a motion to quash the indictment because the indictment failed to charge petitioner with a crime. While the indictment provides that petitioner illegally collected fees and charged people in connection with "the lodging and filing of peace bonds," "Article 29B of the Code of Criminal Procedure mandates and requires the applicant for a peace bond to pay advanced court costs."[8] Thus, petitioner contends that the indictment was defective since, as

---

[8] *See* Memorandum of Petitioner in Support of Amended Petition for Writ of Habeas Corpus at p. 4. LSA-C.Cr.P. art. 29B provides, in pertinent part: "The applicant for a peace bond shall pay as advanced court

12

set forth in Code of Criminal Procedure Article 29B, the collection of fees from peace bond applicants is not illegal.

Petitioner also argues that counsel was ineffective due to their failure to object to the introduction into evidence of the "Peace Bond files." According to petitioner, this objectionable evidence "probably formed the sole basis for petitioner's conviction."[9]

Once again, petitioner's ineffectiveness arguments are without merit because he suffered no prejudice due to the above-described deficiencies on the part of counsel. Petitioner suffered no prejudice as a result of counsel's failure to file a motion to quash the indictment because such a motion would not have been successful. There was no problem with petitioner's indictment in that it did charge petitioner with illegal activity. LSA-R.S. 13:2589A clearly provides that justices of the peace shall receive no fee in peace bond cases.

Nor was petitioner prejudiced by counsel's failure to object to the admissibility of the "Peace Bond files." Ample evidence, other than these allegedly objectionable "Peace Bond files," was produced at trial which clearly showed that petitioner did, in fact, violate R.S. 13:2589A by taking fees in connection with his handling of peace bond cases.

> At trial, the state ... introduced a copy of a form which was utilized in defendant's office by individuals seeking his services as a justice of the peace. The form contained spaces to indicate the service sought, including peace bonds, and indicated the filing fee for each procedure. The filing fee listed for peace bonds was $60.00. Belinda Durr, a former secretary of defendant, testified defendant himself made up the forms used in the office and set the fees for all services. Maureen Perry, another former employee of defendant, also testified defendant set the fees for services and told her to charge $60.00 for peace bonds. Both Ms. Durr and Ms. Perry indicated they collected fees for peace bonds during the time they worked for

---

costs a fee of fifteen dollars for each defendant summoned to a hearing."

[9] See Memorandum of Petitioner in Support of Amended Petition for Writ of Habeas Corpus at p. 6.

defendant.

*Schwehm*, 713 So.2d at 702.

### 5. Counsel's Failure to Present to the Jury Evidence of Petitioner's Escrow Account Maintained for the Purpose of Reimbursing the St. Tammany Parish Police Jury for Litter Fines

Petitioner complains that defense counsel were ineffective due to their failure to offer evidence to the jury regarding an alleged escrow account maintained by petitioner to reimburse the St. Tammany Parish Police Jury for collected litter fines. Again however, to the extent such evidence existed, petitioner was not prejudiced by counsel's failure to present it, in light of the State's overwhelming evidence to the effect that petitioner "pocketed" much of the money he collected in litter fines.[10] Absent a showing of prejudice, petitioner cannot satisfy the *Strickland* requirements and therefore, is not entitled to habeas corpus relief.

### B. Insufficiency of Evidence

Petitioner complains that the evidence was insufficient to find that he improperly charged fees in connection with his issuance of peace bonds and that he improperly expropriated for his private use litter fine payments which should have been reimbursed to the St. Tammany Parish Police Jury. When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254 (d)(1).

The "clearly established" federal law was enunciated by the Supreme Court in *Jackson*

---

[10] The State's evidence in this regard is set forth *infra* at pp. 16-17 in connection with petitioner's claim that insufficient evidence was submitted to support his malfeasance conviction based upon his failure to reimburse the parish authority for the money he collected in litter fines.

*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The *Jackson* Court held that a claim of insufficient evidence would lie if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. *Id*.

With regard to petitioner's contention that the evidence was insufficient to support the jury's finding that he was guilty of improperly taking fees in peace bond cases, the state court decision to be analyzed, i.e., the state court decision addressing petitioner's insufficient evidence claim, was rendered by the Louisiana First Circuit Court of Appeal in *Schwehm*, 713 So.2d at 699-703. In that case, the First Circuit determined that "the evidence was sufficient to establish that [petitioner] was responsible for charging and collecting filing fees from individuals who came to the justice of the peace court requesting peace bonds," based upon the following analysis:

> The standard of review for sufficiency of the evidence is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.... The Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), standard of review ... is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt....
>
> LSA-R.S. 14:134 [the statute which petitioner was determined to be guilty of violating] provides that malfeasance in office is committed when any public officer or public employee shall:
>
>> (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
>> (2) Intentionally perform any such duty in an unlawful manner; or
>> (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner....
>
> [D]efendant argues the evidence was insufficient to sustain his conviction on

15

this count because the state did not establish that any peace bonds actually were issued or forfeited. In particular, he notes the state failed to introduce any peace bond issued by him. He further argues that, although individuals may have come into his office requesting peace bonds, what they actually received were restraining orders or, in some cases, a judgment.

At trial, Scott Carlton, an investigative auditor with the legislative auditor's office, testified that an examination of the records of defendant's checking account revealed the deposit of seventy-three checks for peace bond charges, as indicated by the notation "P.B" on the deposit slips. There was testimony that this notation was an abbreviation for peace bond. The total of the deposits in question was $4,060.00. In defendant's computer records, which were posted by defendant himself, the words "peace bond" were spelled out next to the deposits. Ernest Levy, a senior investigative auditor who also participated in the investigation of defendant's office, testified the majority of the charges were for $60.00, although some were for $25.00.

In a taped interview with Carlton and Levy, defendant denied he charged anyone for peace bonds. However, he later stated he initially charged $25.00 for peace bonds when he first took office, believing he was entitled to do so under LSA-C.Cr.P. art. 29. After he attended a seminar and learned such fees were impermissible, he stopped charging any fee for peace bonds. He indicated that, in some of the cases in which people requested peace bonds from him, he issued restraining orders rather than peace bonds. He stated that those cases in which there was a charge for a peace bond probably were instances where his constable, Charlie Edwards, collected the fees and forged defendant's name. Defendant claimed he did not realize Edwards was charging for peace bonds until he began his own internal audit in September of 1993. He further indicated that, although he posted deposits on his computer designating them as charges for peace bonds, he was merely copying the notations made by his staff on the deposit slips, and it did not occur to him to question it.

At trial, the state also introduced a copy of a form which was utilized in defendant's office by individuals seeking his services as a justice of the peace. The form contained spaces to indicate the service sought, including peace bonds, and indicated the filing fee for each procedure. The filing fee listed for peace bonds was $60.00. Belinda Durr, a former secretary of defendant, testified defendant himself made up the forms used in the office and set the fees for all services. Maureen Perry, another former employee of defendant, also testified defendant set the fees for services and told her to charge $60.00 for peace bonds. Both Ms. Durr and Ms. Perry indicated they collected fees for peace bonds during the time they worked for defendant.

*Schwehm*, 713 So.2d at 699-702.

This Court finds the above analysis to be a reasonable application of *Jackson* to the facts of this case. Accordingly, petitioner is not entitled to habeas corpus relief.

With regard to petitioner's claim that the evidence was insufficient to support the jury's finding that he improperly expropriated for his private use litter fine payments, the state court decision to be analyzed, i.e., the state court decision addressing petitioner's's insufficient evidence claim, was rendered by the Louisiana Supreme Court in *Schwehm*, 729 So.2d 548 (La. 1999). In that case, the Louisiana Supreme Court noted that LSA-R.S. 14:134(1) and (2), the particular criminal provisions which petitioner was found to have violated, "presuppose the existence of a statute or provision of the law which delineates an affirmative duty upon the official." *Id.*[11] The law which delineated the affirmative duty which petitioner was found to have violated is set forth in St. Tammany Parish Police Jury Ordinance No. 89-1148 which "required that the justice of the peace courts remit all litter fines in full to the Police Jury which would, in turn, reimburse 50 per cent of the amount collected to the justice of the peace courts for the time spent and expenses incurred in enforcing the littering law." *Id.* at 549. With the above legal provisions in mind, the Louisiana Supreme Court reviewed the evidence produced at trial.

> The state established through the testimony of state auditors Carlton and Levy that, in fact, "no remittance to the Parish had been made during the period Mr. Schwehm was the Justice of the Peace for the Eighth Ward of St. Tammany Parish." According to Levy, the defendant's records indicated that over the three-year period he had collected litter fines in the amount of $4,475.00 by check and $1,550.00 in cash. Levy found corresponding deposits in the defendant's Justice of the Peace bank account for the checks but "could not find any evidence that any of those amounts that were collected in cash had actually been deposited into the JP's account." Levy described that account as an ordinary bank account as opposed to an escrow account which "is normally used to hold funds in abeyance before they are actually turned over to another party, parties or entity." Asked by the prosecutor whether the defendant

---

[11] *See supra* at pp. 14-15 for text of LSA-R.S. 14:134.

maintained an escrow account in addition to his regular justice of the peace account, Carlton replied, "Not that he told us about."

When Levy inquired about the fines, the defendant explained that the Parish had never instructed him about remitting the amounts collected. According to Levy, the defendant also told the auditor "that the costs of assessing and collecting the litter fines actually exceeded the amount of the proceeds from the fines." In the same meeting, however, the defendant informed the auditor "that any excess that he would have from a litter fine over expenses was split equally between himself and the Constable."

The auditors' investigation revealed that by September of 1993, the defendant had collected at least five thousand dollars in litter fines. At the same time, the defendant's Justice of the Peace account reflected a balance of only $3,500.00. When Levy combined the litter fines with the total amount the defendant had charged for issuing peace bonds over the same three-year period, the subject of the second malfeasance count, the figure rose to ten thousand dollars, nearly three time (sic) the amount shown as the balance in the Justice of the Peace account at the end of September, 1993. Levy's investigation had also revealed a pattern of disbursements from the account to the defendant in increasing amounts, from early draws of five hundred dollars to one thousand dollars by the spring of 1993. The auditors testified that they found nothing wrong in the defendant's use of the account to pay himself and the constable. However, the largest draw occurred on September 24, 1993, when the defendant wrote a check on his Justice of the Peace account for $8,840.00 payable to his professional law firm account maintained in New Orleans. That transfer of funds explained the low balance in the Justice of the Peace account for the month. Levy testified that by November of 1993, the balance in the Justice of the Peace account had risen to $8,710.00, still significantly lower than the total amounts collected by the defendant in litter fines and peace bond charges.

According to Belinda Durr, who worked as defendant's secretary for approximately five months at the end of 1992, when the office received cash for litter fines, defendant used the money in a variety of ways, dividing it with the constable "for office expenses or to go to lunch or whatever they wanted to do with it." Durr testified that when she asked about the fines, and about whether the state received any of the money, defendant told her that "what they don't know doesn't hurt them." Maureen Perry, who also worked as a secretary for the defendant, told jurors that whatever cash was received in the office for litter fines or fees for issuing peace bonds would be "disburse[d] at the end of the week." Perry testified that when she asked the defendant about the litter fines, he replied that "it was his money and he said he could do what he wanted." The defendant made a similar statement to Mario Ventura, president of the St. Tammany Parish Justice of the Peace Association, in the early spring of 1992, when both men were attending a conference of justices of the peace

       in Lafayette. Ventura testified that when he asked the defendant whether he was turning over the litter fines to the parish the defendant replied that he was absorbing the money collected "in court costs ... eating it up in expenses." When Ventura asked how he was doing that, the defendant added, "Well, you're a smart guy, figure it out."

*Id.* at 550-51.

       Based upon the above, the Louisiana Supreme Court concluded there was sufficient evidence to support the jury's guilty verdict. Such a finding does not represent an unreasonable application of the law enunciated in *Jackson, supra*. Accordingly, petitioner's claim for habeas relief is without merit.

## RECOMMENDATION

       It is therefore **RECOMMENDED** that the petition of Jerry Kenneth Schwehm for issuance of a writ of *habeas corpus* under 28 U.S.C. § 2254 be **DENIED** with prejudice. A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result form a failure to object. *Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

       New Orleans, Louisiana, this 8th day of December, 2000.

                                                        UNITED STATES MAGISTRATE JUDGE